UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MORRIS EUGENE FOSTER,

        Petitioner,

                                CASE NO. 2:08-CV-14269

   v.                            JUDGE ROBERT H. CLELAND

                                MAGISTRATE JUDGE PAUL J. KOMIVES

DAVID BERGH,

        Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     D.   *Evidentiary Claims (Claims I, V & VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         2.   *Other Acts Evidence (Claims I & V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
         3.   *Telephone Recordings (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     E.   *Suppression of Evidence (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     F.   *Prosecutorial Misconduct (Claim X)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            a.  Victim Testimony Regarding Inaudible Portions of Recordings . . . . . . . . . . . . . . . 17
            b.  Perjury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            c.  Testimony Regarding Religious Practices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     G.   *Sentencing (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
         1.   *Guidelines Scoring and Uncharged Conduct* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
         2.   *Determination of Facts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     H.   *Ineffective Assistance of Counsel (Claims III, VIII, IX & XI)* . . . . . . . . . . . . . . . . . . . . . . . 26
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
            a.  Failure to Investigate/Prepare for Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
            b.  Failure to Move to Suppress Recorded Conversations . . . . . . . . . . . . . . . . . . . . . . 32
            c.  Failure to Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
     I.   *Denial of Appeal (Claims XIII & XIV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

_____

    [1]By Order entered this date, David Bergh has been substituted in place of Nick J. Ludwick as the proper respondent in this action.

J.      *Newly Discovered Evidence (Claim XII)* ........................................... 38
K.      *Evidentiary Hearing (Claims VII, XIII & XIV)* ..................................... 39
        1.      *State Court Denials of Evidentiary Hearing* ................................ 39
        2.      *Entitlement to Evidentiary Hearing in this Court* ........................... 40
L.      *Recommendation Regarding Certificate of Appealability* ............................ 42
        1.      *Legal Standard* ...................................................... 42
        2.      *Analysis* ........................................................... 44
M.      *Conclusion* .................................................................. 44
III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> ..................................... 45

\*       \*       \*       \*       \*

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

        1.      Petitioner Morris Eugene Foster is a state prisoner, currently confined at the Thumb Correctional Facility in Lapeer, Michigan.

        2.      On October 12, 2005, petitioner was convicted of three counts of third degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d, following a jury trial in the Oakland County Circuit Court. On October 27, 2005, he was sentenced as an habitual offender to concurrent terms of 33-60 years' imprisonment on each count.

        3.      Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      DEFENDANT WAS DENIED A FAIR TRIAL BY THE INTRODUCTION OF OTHER ALLEGED, UNCHARGED ACTS BOTH WITH THE COMPLAINANT AND HIS NIECE AND THE EVIDENCE THAT WAS UNCONNECTED TO THE INSTANT OFFENSE AND IRRELEVANT TO ANY PROPER PURPOSE UNDER MRE 404(B). US CONST AM XIV.

        II.     THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY DEPARTING ABOVE THE STATUTORY SENTENCING GUIDELINE RANGE BASED ON DISPUTED FACTS WHICH THE PROSECUTOR DID NOT PROVE BEYOND A REASONABLE DOUBT

AND FACTS THAT WERE ALREADY SCORED OR CONSIDERED WITHIN THE SENTENCING GUIDELINES.

Petitioner filed a *pro se* supplemental brief raising the following additional claims:

I. TRIAL COUNSEL WAS INEFFECTIVE THROUGHOUT TRIAL, WHICH DEPRIVED DEFENDANT OF A DEFENSE IN VIOLATION OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO COUNSEL AND TO PRESENT A COMPLETE AND EFFECTIVE DEFENSE.

II. DEFENDANT IS ENTITLED TO A NEW TRIAL BASED ON THE VIOLATION OF THE DISCOVERY ORDER AND SUPPRESSION OF EXCULPATORY EVIDENCE OR, IN THE ALTERNATIVE, BASED ON NEWLY DISCOVERED, EXCULPATORY EVIDENCE. US CONST AM VI; XIV.

III. THE TRIAL COURT VIOLATED DEFENDANT'S DUE PROCESS RIGHTS BY ADMITTING UNDULY PREJUDICIAL EVIDENCE OF OTHER CRIMES AND BAD ACTS.

IV. THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY ADMITTING A TAPE RECORDING INTO EVIDENCE, WHERE THE SUBJECT OF THE RECORDING COULD NOT BE AUTHENTICATED AND WHERE THE DANGER OF UNFAIR PREJUDICE FROM THE RECORDING SUBSTANTIALLY OUTWEIGHED ITS PROBATIVE VALUE.

V. DEFENDANT IS ENTITLED TO REMAND TO A GINTHER HEARING TO SHOW, BY SEPARATE RECORD, THAT TRIAL COUNSEL WAS INEFFECTIVE.

VI. DEFENDANT WAS DENIED THE CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S ERRORS SINGULARLY AND OR CUMULATIVELY DEPRIVED SUBSTANTIAL RIGHTS.

A. TRIAL COUNSEL FAILED TO MOTION TO SUPPRESS OFFICIAL'S [sic] ILLEGAL WARANTLESS RECORDING OF TELEPHONE CONVERSATION WHERE THE PARTICIPANT CONSENT IS OBVIOUSLY INVALID DUE TO TEXAS COURT ORDERED PERSONAL PROTECTION ENJOINING SUCH RIGHTS THAT DEFINED SUCH CONDUCT CRIMINALLY PROHIBITED.

VII. TRIAL COUNSEL FAILED TO INVESTIGATE AND PREPARE FOR A CREDIBILITY CONTEST TRIAL INCLUDING OBTAINING IMPEACHMENT EVIDENCE.

    A. TRIAL COUNSEL FAILED TO OBTAIN AND REVIEW WITH HIS CLIENT THE PROSECUTOR'S TAPED TELEPHONE CONVERSATIONS STRICKEN WITH UNINTELLIGIBLE SECTIONS TO DETERMINE APPROPRIATE TRIAL STRATEGY.

    B. TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO OBTAIN KNOWN EVIDENCE TO IMPEACH VICTIM AND PROSECUTOR'S WITNESS AND OR REQUEST CONTINUANCE.

VIII. DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT EMPLOYING AN IMPROPER PROCEDURE AT TRIAL TO SUPPLEMENT UNINTELLIGIBLE SECTIONS IN TAPE RECORDING(S) WITH VICTIM'S OPINION AND TESTIMONY, THEN IMPROPERLY BOLSTERED THAT EVIDENCE BY ELICITING OFFICIAL ACTION CONTRASTED TO VICTIM'S RELIGIOUS PRACTICES TO WARD OFF FUTURE SEXUAL ASSAULTS.

IX. TRIAL COUNSEL'S ERRORS WERE SO SERIOUS AS TO DEPRIVE THE DEFENDANT OF A FAIR TRIAL, A TRIAL WHOSE RESULT IS RELIABLE.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented." *People v. Foster*, No. 273987 (Mich. Ct. App. June 8, 2007) (per curiam). The court of appeals also denied petitioner's motions to remand for an evidentiary hearing, to submit new evidence, and to hold the case in abeyance

    4. Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Foster*, 480 Mich. 952, 741 N.W.2d 363 (2007).

    5. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on October 7, 2008. As grounds for the writ of habeas corpus, he raises the eleven claims that he

4

raised in the Michigan Court of Appeals, as well as a claims of newly discovered evidence and denial of appeal of right.

      6.      Respondent filed his answer on June 1, 2009.  He contends that petitioner's claims are without merit.

      7.      Petitioner filed a reply to respondent's answer on July 16, 2009.

B.     *Factual Background Underlying Petitioner's Conviction*

      Petitioner's convictions arise from the repeated sexual assault of his daughter over a period of several years.  The evidence adduced at trial was accurately summarized in petitioner's brief in the Michigan Court of Appeals:

> Carietha Johnson, 21 years of age, testified that she was a student at Prairie View A&M in Texas and that she was studying chemical engineering.  Prior to college, Johnson lived on Strathmore in Detroit with Mr. Foster and her step-mother.  After she enrolled in college, Mr. Foster moved to Ferndale.  Johnson stated that she moved in with Mr. Foster when she was 12 years old.  She had been in foster care for approximately 18 months prior to that, because her mother, Sarietha Johnson, was a drug addict and protective services had removed her from her mother's care.
>
> Johnson claimed that her father sexually abused her beginning at the age of 12.  She alleged that he penetrated her with his penis approximately once a week until she told her mother and her aunt.  When she turned 14, Johnson claimed these sexual assaults began to occur a "couple of times" a week, and she told her aunt again.
>
> At the age of 15, Johnson began fighting back and claimed Mr. Foster would become physically abusive toward her.  She never showed anyone the marks on her body.  Johnson testified that Mr. Foster was strict and would not let her date before prom her senior year of high school.  At the age of 19, Johnson claimed Mr. Foster hit her in the face, but no one saw it occur or the marks it left.
>
> Johnson alleged that in the Fall of 2002, Mr. Foster came down to college with her prior to her first semester.  She stayed in a motel with him and claimed Mr. Foster sexually assaulted her.
>
> Johnson stated that she came home from college during Christmas break of 2002.  Mr. Foster had moved to Ferndale at this time.  Johnson alleged that Mr. Foster sexually assaulted her, and she told him that she would not come home anymore.  Johnson again returned to Ferndale during her spring break in March 2003.  She claimed that more sexual assaults took place.
>
> After that break from school, Johnson returned to Texas, but came back to Ferndale at the end of the semester in May 2003.  At that time, her stepmother was

not living with Mr. Foster, and Johnson told him she was suicidal. She claimed that Mr. Foster told her the assaults would stop, but they did not.

During summer school in 2003, Johnson told a counselor about the alleged assaults. Around the same time, Johnson told Mr. Foster that she would have no more contact with him. Johnson then claimed Mr. Foster began calling her 30 to 50 times a day and made threats that led her to report his calls.

In December 2003, Johnson contacted and spoke with the Ferndale Police Department. She then called Mr. Foster from the Ferndale Police Department and those calls were recorded. A few of the taped calls were played for the jury during the trial.

Johnson alleged that she became pregnant her sophomore year of high school by Mr. Foster and that the pregnancy ended in a miscarriage. This information had not been previously testified to by Ms. Johnson or told to anyone, including the prosecutor's office. It came out for the first time at trial and was not supported by any other testimony or medical records.

Sareena Saulter testified that Carietha Johnson was her niece and that Johnson lived with her during the summers of 1993 and 1997. Saulter stated that Johnson told her about Mr. Foster's alleged sexual assaults, and that Johnson wanted to tell the police but was very afraid. Saulter did nothing but take Johnson to a doctor for an examination. Saulter then testified that Mr. Foster "raised her fine" in reference to Carietha Johnson.

Sarietha Johnson testified that she was Carietha's mother and that her daughter last lived with her when she was 10 years old. Protective services took her children away due to neglect caused by Sarietha's addiction to crack cocaine. Johnson voluntarily terminated her parental rights to Carietha so Mr. Foster could raise her. She was currently residing at Scott Correctional Facility serving a sentence for armed robbery.

Sarietha testified that years ago, Carietha had told Sareena Saulter that Mr. Foster had improperly touched her. She claimed that in 2003, Mr. Foster admitted to sleeping with Carietha. Yet, Sarietha did not contact the police or any other authorities.

Maria Payne testified that she was Carietha Johnson's cousin and her best friend. Payne talked to Carietha several times a week. On the night of Carietha's prom, Payne was at the home waiting for Carietha to return. Payne was planning on spending the night and claimed while waiting, Mr. Foster sexually assaulted her in the guest room.

Payne did not tell Carietha when she came home, but later told Mr. Foster's sister Myra, an Aunt Lisa and an uncle. Aunt Myra did not believe her. Payne never went to the police about this alleged incident, but claimed to tell a school counselor that did nothing about it. She never knew about the allegations against Mr. Foster by Carietha until years later. At the conclusion of Payne's testimony, the prosecution rested.

Defendant-Appellant Morris Foster testified that he was 46 years old and had prior felony convictions for controlled substances, attempted burglary, and assault

with intent to rob while armed. Foster stated that he was Carietha's father and that he had been given custody of his daughter by the court when she was in seventh grade. Mr. Foster raised Carietha from that point onward. In 2000, he married Ernestine Coats. Mr. Foster testified that Carietha did not like his parental restrictions as she was used to taking care of herself.

Mr. Foster denied having sexual relations with Maria Payne on the night of Carietha's prom. Mr. Foster also denied ever having sexual relations with his daughter or knowing that she was pregnant.

Naomi Sanders testified that Mr. Foster is her godson and that Carietha lived with her while Mr. Foster was in rehab. Sanders asked Carietha directly if Mr. Foster ever touched her, and Carietha told her that he had never touched her. Carietha also never told her that she was pregnant.

Candace Scott testified that Mr. Foster is her uncle and that she would stay at his home. Scott indicated that she spent an entire summer at Mr. Foster's residence, and Carietha never told her about any sexual assaults.

Melody Merchant testified that she lived with Mr. Foster and had known him since she was 16 years old. Merchant's mother was married to Mr. Foster at the time of trial. Carietha never said anything to her about assaults and Mr. Foster never assaulted her.

Def.-Appellant's Br. on App., in *People v. Foster*, No. 273987 (Mich. Ct. App.), at 2-6.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle

or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Evidentiary Claims (Claims I, V & VI)*

In his first, fifth, and sixth claims, petitioner challenges the admission of evidence at his trial. In his first and fifth claims, he contends that the trial court erred in admitting evidence of other bad acts. In his sixth claim, he contends that the trial court erred in admitting the recordings of telephone conversations between him and the victim. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.      *Other Acts Evidence (Claims I & V)*

At trial, the prosecution introduced evidence that petitioner had committed sexual assaults,

other than those charged in the information, against the victim, and that he had committed sexual assaults against the victim's cousin. As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974). Here, the evidence was admissible for the proper purposes of showing a common scheme or plan, and to explain the victim's delay in reporting the assaults. *See* Mot. Hr'g Tr., dated 8/3/05, at 37; MICH. R. EVID. 404(b). Petitioner contends that this evidence was unreliable because he was never arrested for or charged with these offenses, and because they were not corroborated by any other evidence. These matters, however, were for the jury to resolve in assessing the credibility of the witnesses, and do not render the evidence inadmissible. Thus, petitioner was not denied a fair trial by the introduction of this evidence.

3.    *Telephone Recordings (Claim VI)*

Petitioner also contends that he was denied a fair trial by the introduction of recordings of telephone conversations between him and the victim, in which the victim discussed petitioner's prior assaults on her. Much of petitioner's argument with respect to the recordings relates to his argument that he was denied a fair trial by the introduction of other acts evidence. This argument fails for the

reasons set forth above. Petitioner also contends that the recordings should not have been admitted because they were not properly authenticated. This claim is without merit. Rule 901 provides, in relevant part, that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MICH. R. EVID. 901(a). The rule goes on to provide "[b]y way of illustration . . . examples of authentication or identification conforming with the requirements of this rule." MICH. R. EVID. 901(b). One such example is "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." MICH. R. EVID. 901(b)(5). At trial the victim, who was familiar with petitioner's voice, testified regarding the circumstances of the recorded phone conversations and identified the male voice on the recordings as belonging to petitioner. *See* Trial Tr., dated 10/11/05, at 5. This was sufficient to authenticate the recordings. *See People v. Berkey*, 437 Mich. 40, 50, 467 N.W.2d 6, 11 (1991) ("[A] tape ordinarily may be authenticated by having a knowledgeable witness identify the voices on the tape."); *id*. at 52, 467 N.W.2d at 12 (footnotes omitted) ("If a tape, or any other proposed exhibit that is subject to the MRE 901 requirement of authentication, is shown to be 'what its proponent claims,' then it has been authenticated sufficiently. In this case, the prosecution claimed that the tapes were recordings of conversations between the victim and the defendant. The prosecution, having shown these tapes to be what it claims them to be, has provided authentication.").

Nor were the tapes inadmissible merely because some portions were inaudible or unintelligible. As the Sixth Circuit has explained under the Federal Rules of Evidence, "[t]he fact that a tape recording has some unintelligible portions does not automatically render the entire

recording inadmissible. For the tape to be inadmissible, the incomprehensible portions must be so 'substantial as to render the recordings as a whole untrustworthy.'" *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995) (quoting *United States v. Robinson*, 763 F.2d 778, 781 (6th Cir.1985) (internal citations and quotations omitted)); *see also*, *United States v. Arango-Correa*, 851 F.2d 54, 58 (2d Cir. 1988). Here, petitioner has offered nothing to show that the inaudible portions of the tape were "so substantial as to render the recordings as a whole untrustworthy." Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[2]

E.      *Suppression of Evidence (Claim IV)*

Petitioner next claims that prosecution suppressed exculpatory evidence in violation of his due process rights. Specifically, petitioner contends that all of the telephone recordings were not disclosed to him. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. However, "there is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Thus, in order to establish a *Brady* violation, petitioner must show both that the prosecutor withheld evidence which was both (1) favorable to the accused and (2) material to guilt or punishment. *See United*

---

[2]Petitioner also contends that his counsel was ineffective for failing to move to suppress the recordings on Fourth Amendment grounds. Petitioner does not appear to raise a substantive claim on this basis, and the claim is therefore addressed in connection with petitioner's ineffective assistance claims, *infra.*

*States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). Furthermore, regardless of the exculpatory nature or materiality of the evidence withheld by the prosecution, "[n]o *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (citations omitted) (internal quotation omitted); *accord United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). Thus, petitioner's claim raises three questions: (1) was the evidence suppressed by the prosecution in that it was not known to petitioner and not available from another source?; (2) was the evidence favorable or exculpatory?; and (3) was the evidence material to the question of petitioner's guilt? *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. If all three of these questions are answered in the affirmative, petitioner has established a constitutional error entitling him to the writ of habeas corpus and "there is no need for further harmless-error review." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). If, one the other hand, any of these questions is answered in the negative, then petitioner has failed to establish a *Brady* violation.

2.      *Analysis*

As noted above, petitioner had no constitutional right to discovery, *see Weatherford*, 429 U.S. at 559, and he therefore cannot establish his entitlement to habeas relief merely by demonstrating that the prosecution failed to provide discovery information in violation of a court order. Any violation of the state law discovery rules raises an issue not cognizable on habeas review. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *Burns v. Lafler*, 328 F. Supp. 2d 711, 723 (E.D. Mich.

2004) (Gadola, J.); *Meade v. Lavigne*, 265 F. Supp. 2d 849, 867 (E.D. Mich. 2003) (Tarnow, J.). Rather, petitioner must show that he was deprived of material, exculpatory information by the prosecution's omission. Petitioner has failed to make this showing.

Specifically, petitioner cannot show that the telephone recordings were suppressed. Petitioner's counsel never indicated at trial that the recordings had not been disclosed, and petitioner's own evidence compels a finding that the recordings were disclosed well before trial. Attached to petitioner's application is a cover letter from the prosecuting attorney, dated August 26, 2005, detailing discovery items sent with the letter. The letter indicates that the discovery packet included both a "Text of Defendant's phone message to Carietha Johnson," and a "Transcript of Defendant's phone call conversation." Pet., Appx. C-7. Petitioner appears to be arguing that the prosecutor violated *Brady* because several portions of the recordings were inaudible or unintelligible. Although *Brady* requires disclosure of exculpatory evidence, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *United States v. Parks*, 100 F.3d 1300, 1305 n.2 (7th Cir. 1996); *Richards v. Solem*, 693 F.2d 760,766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence."). Because petitioner does not allege that a recording existed in which the entire conversation was audible, petitioner cannot show that the prosecution suppressed any existing evidence within the meaning of *Brady*. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.       *Prosecutorial Misconduct (Claim X)*

Petitioner next contends that he was denied a fair trial by several instances of prosecutorial misconduct. All of these alleged errors relate to the victim's testimony regarding the recorded

telephone conversations. Specifically, petitioner contends that the prosecutor committed misconduct by: (1) employing an improper procedure whereby the victim supplemented the inaudible portions of the telephone recordings; (2) improperly eliciting opinion testimony regarding what was on the recordings and suborning perjury; (3) bolstering the victim's testimony by indicating that the conversations were recorded at the direction of the police; and (4) eliciting testimony regarding the victim's religious practices. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

      2.      *Analysis*

### a. Victim Testimony Regarding Inaudible Portions of Recordings

Petitioner contends that the prosecutor employed an improper procedure by asking the victim to testify regarding what petitioner was saying to her during the inaudible portions of the recorded telephone conversations. *See* Trial Tr., dated 10/11/05, at 5-11. However, petitioner has failed to point to any rule or decision which suggests that such testimony was improper. Had the conversations not been recorded, there would have been no evidentiary bar to the victim testifying with respect to the conversations she had with petitioner and the statements he made to her. Such a bar did not arise merely because the conversations were recorded. Thus, the victim was free to testify as to her recollection of petitioner's statements to her. Contrary to petitioner's argument, the victim's testimony did not amount to hearsay, because petitioner's statements to her constituted a statement by a party opponent. *See* MICH. R. EVID. 801(d)(2). Nor did the prosecutor improperly bolster the testimony of the victim by eliciting that the recordings were made at the direction of the police. The prosecutor did not suggest that the victim's testimony was believable because she was acting in concert with the police. Rather, the evidence was elicited solely by way of background to show how the recordings came to be. Thus, petitioner cannot show that the prosecutor committed misconduct in questioning the victim regarding the substance of the inaudible portions of the recordings.

### b. Perjury

Petitioner also contends that because the portions of the recordings were inaudible, the victim's testimony regarding what petitioner was saying during those inaudible portions was fabricated, and that he was denied a fair trial by the prosecutor's presentation of this false testimony. It is well established that "a conviction obtained by the knowing use of perjured testimony is

fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected, *see id.* at 269. It is equally well established, however, that petitioner bears the burden of proving that the testimony amounted to perjury. As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured. Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976). Thus, to succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material. *See Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1999). As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with

the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'"). In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

Here, petitioner cannot show that the victim's testimony was "indisputable false." Petitioner does not point to any specific statement attributed to him by the victim as being false, nor does he provide any evidence to suggest that the victim's testimony was false. Rather, he contends only that the victim's testimony must have been fabricated because she was purporting to identify what he said when the tape was inaudible. This alone, however, does not show that the victim's testimony was false because the victim was a participant in the recorded conversations. Thus, the victim could testify to her recollection of petitioner's statements independent of the recording, and the fact that the recording was inaudible does not show that her independent recollection was false. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Testimony Regarding Religious Practices

Finally, petitioner contends that the prosecutor committed misconduct by eliciting testimony regarding the victim's religious practices. During direct examination, the victim testified that she coped with the assaults by praying for them to stop, and that she sometimes asked petitioner to pray for the assaults to stop. She explained that she returned home after she had left for college in Texas because she was hoping and praying that petitioner would stop assaulting her. *See* Trial Tr., dated 10/11/05, at 12-14.

A prosecutor may not inject a person's religious beliefs into a trial to argue that those beliefs themselves establish the credibility or lack of credibility of a witness or establish guilt. *See* FED. R. EVID. 610; MICH. R. EVID. 610. Notwithstanding this rule, "[a] person's beliefs, superstitions, or

affiliations with a religious group is properly admissible where probative of an issue in a criminal prosecution." *United States v. Beasley*, 72 F.3d 1518, 1527 (11th Cir. 1996). Here, the evidence relating to the victim's praying was not injected to suggest that the victim was more credible than petitioner, nor did the prosecutor make such an argument. Rather, the evidence was relevant to help explain how the victim coped with the sexual assaults and why she would return to the home after she had left for college. The evidence was therefore relevant, and was not improperly used to credit the victim on the basis of her religious beliefs. *Cf. United States v. Hoffman*, 806 F.2d 73, 708-09 (7th Cir. 1986) (evidence of religious beliefs properly admitted where they were probative of defendant's motive). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Sentencing (Claim II)*

In his second claim, petitioner contends that the trial court improperly scored and departed upward from the sentencing guidelines, based its sentence in part on uncharged conduct for which he was not convicted, and based its sentence on disputed facts which the prosecution did not prove beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Guidelines Scoring and Uncharged Conduct*

Petitioner contends that the trial court improperly scored the Michigan sentencing guidelines in his case, and that the court improperly departed upward from the guideline sentence without providing a compelling reason for doing so. This claim is not cognizable on habeas review. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v.*

*Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

Nor is petitioner entitled to relief on the basis that the trial court relied on uncharged conduct–the other sexual assaults against the victim and her cousin–in determining an appropriate sentence. As the Supreme Court has explained, traditionally "[s]entencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior." *Nichols v. United States*, 511 U.S. 738, 747 (1994); *see also*, *United States v. Miller*, 588 F.2d 1256, 1266 (9th Cir. 1978) ("[E]vidence of other criminal conduct not resulting in conviction may be considered when imposing sentence."). Thus, the trial court was free to consider petitioner's other criminal behavior in imposing a sentence within the range prescribed by the legislature for the crimes on which petitioner was convicted. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these sentencing claims.

2.    *Determination of Facts*

Petitioner also contends that the trial court based its sentence on facts which were not proved by the prosecution beyond a reasonable doubt.  Although he does not explicitly cite to them, this claim appears to be based on the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines.  The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed.  The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt.  Two separate majorities formed the Court's decision.  Justice

Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id*. at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

*Blakely* and *Apprendi*, however, are inapplicable here. Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); Mich. Comp. Laws § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing Mich. Comp. Laws § 769.34(2)). Under Michigan law, the trial judge sets

the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the CSC-I charges, therefore, contained all of the factual findings necessary to impose the statutory maximum (life imprisonment) on those charges. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

24

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Ineffective Assistance of Counsel (Claims III, VIII, IX & XI)*

Petitioner next raises several ineffective assistance of counsel claims. In Claims III and IX,

petitioner contends that counsel failed to investigate impeachment evidence to attack the credibility of the victim and her cousin, failed to interview witnesses, and failed to obtain and review with petitioner the taped telephone conversations. In Claim VIII, petitioner contends that counsel was ineffective for failing to move to suppress the warrantless recording of his telephone conversations with the victim. In Claim XI, petitioner contends that counsel was ineffective for failing to object to the prosecutor's improper questioning of the victim regarding the unintelligible portions of the recordings and to the introduction of other acts testimony, and that counsel's errors on the whole were prejudicial. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

        1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at

689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.      *Analysis*

a. *Failure to Investigate/Prepare for Trial*

Petitioner contends that counsel was ineffective for failing to investigate impeachment evidence that would have discredited the victim and her cousin regarding their claims of sexual assault. Specifically, petitioner contends that counsel should have investigated the medical records of the victim to impeach her with evidence that she was taking birth control pills and to impeach her testimony that she had become pregnant as a result of the sexual assaults, which pregnancy ended in a miscarriage. Petitioner also contends that counsel should have investigated the medical records of the victim's cousin, Maria Payne, who claimed at trial that she went to the doctor because of the sexual assault committed on her by petitioner. Even assuming that the records would have provided additional impeachment information (which petitioner has provided no basis to believe), petitioner cannot show that counsel was ineffective for failing to obtain these records. In the first place, counsel had no reason to request the victim's medical records to impeach her testimony that she became pregnant by petitioner because, as counsel elicited from the victim on cross-examination, she

had never told anyone of this fact until her testimony at trial. *See* Trial Tr., dated 10/11/05, at 44-45.

Further, counsel elicited from the victim the fact that she was taking birth control pills. *See id*. at 38-39. In any event, petitioner cannot show that he was prejudiced by counsel's failure to investigate this evidence because counsel presented a significant impeachment case. Counsel elicited from the victim on cross-examination that she had never told her doctors about the sexual assaults during high school, *see id*. at 22-23; that she did not tell anyone about the assaults in high school even though she had a leadership position in the Junior ROTC program, which required honesty, *see id*. at 23-24; that she did not tell anyone about the December 2002 assault, which occurred when she was home from college, when she returned to college or when she was on a trip to Florida with her godmother, *see id*. at 32-33; and that she never told any of the other various family members with whom she lived during the years the assaults were occurring, *see id*. at 35-37. With respect to Payne, counsel elicited on cross-examination that she never turned her medical records over to the police even though she had obtained them, *see id*. at 85; that she had not reported petitioner's assault of her to the police, *see id*. at 87; and that the family members to whom she reported the assault did not believe her, *see id*. at 87-88. In addition to this impeachment through cross-examination, counsel presented several witnesses who also impeached the victim's testimony. Naomi Sanders testified that, at a family barbeque, she explicitly asked the victim if petitioner or anyone else had been sexually assaulting her, and the victim stated the petitioner was not sexually assaulting her. *See id*. at 140. Sanders also testified that the victim never told her that she had been assaulted or become pregnant. *See id*. at 140-41. Candace Scott testified that the victim never told her of the sexual assaults, *see id*. at 145, and that she never witnessed or heard rumors about any inappropriate sexual behavior despite staying with petitioner a number of times over the years. *See id*. at 146. And

Melody Merchant, petitioner's step-daughter, likewise testified that the victim never told her about any sexual assaults and that she was never assaulted by petitioner. *See id*. at 149. In closing argument, counsel relied on the lack of any medical records to argue that the victim's claim that she had become pregnant was not true. *See id*. at 172-73. Counsel also extensively detailed the repeated failures of the victim to report the sexual assaults when she had multiple opportunities to do so, *see id*. at 173-75, and noted that neither Payne's family members nor her school counselor believed her claim that she had been sexually assaulted by petitioner, *see id*. at 175-76.

"[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (Friedman, J.); *see Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001); *Dows v. Wood*, 211 F.3d 480, 489 (9th Cir. 2000). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell*, 194 F. Supp. 2d at 1219; *accord Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002) (Rosen, J.). The mere fact that other avenues of impeachment may have existed does not render counsel ineffective. *See Poyner v. Iowa*, 990 F.2d 435, 438 (8th Cir. 1993); *see also*, *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (internal quotation omitted) (counsel not ineffective even though "other testimony might have been elicited from those who testified."); *United States v. Kozinski*, 16 F.3d 795, 817 (7th Cir. 1994) (counsel not ineffective where counsel could have elicited additional impeachment information on cross-examination).

Here, the record shows that counsel ably presented extensive evidence on petitioner's behalf, and thoroughly cross-examined the prosecution's witnesses. That some additional impeachment information may have been available to counsel does not support a finding that counsel's

performance was deficient. *See Millender*, 187 F. Supp. 2d at 872; *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001) (Tarnow, J.). Defense counsel thoroughly cross-examined each of the prosecution witnesses, eliciting weaknesses in their version of events and inconsistencies in their testimony. The record shows that counsel's cross-examination was more than adequate to meet the Sixth Amendment standard for effective assistance of counsel. *See, e.g.*, *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995); *United States v. McKinney*, 954 F.2d 471, 481 (7th Cir. 1992); *Garcia v. Kuhlmann*, 897 F. Supp. 728, 730 (S.D.N.Y. 1995); *Wolfe v. United States*, 894 F. Supp. 1310, 1317 (D. Minn. 1995), *aff'd*, 92 F.3d 1190 (8th Cir. 1996).

Further, petitioner cannot establish prejudice. Counsel thoroughly impeached the victim's testimony at trial, and the jury nevertheless credited her version of events. The victim's "credibility was significantly impeached on cross-examination as it was, and the jury nevertheless chose to believe h[er] testimony. It is therefore not reasonably probable that the result of the proceeding would have been different had counsel introduced this evidence." Gonzales v. Warren, No. 03-CV-74266, 2005 WL 1348701, at *12 (E.D. Mich. Apr. 14, 2005) (Komives, M.J.), *report adopted*, No. 03-CV-74266 (E.D. Mich. May 25, 2005) (Roberts, J.); *cf. United States v. Avellino*, 136 F.3d 249, 257 (2d Cir.1998) (on *Brady* claim based on suppression of impeachment evidence, "where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.").

Petitioner also contends that counsel was ineffective for failing to interview potential witnesses. However, he has failed to provide the names of any specific witnesses or detail the expected testimony that they would have given. It is petitioner's burden to establish the elements

of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Similarly, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Because petitioner has identified no specific defense witnesses counsel failed to interview or call, nor identified what evidence these witnesses would have provided, petitioner has failed to meet his burden of demonstrating counsel's ineffectiveness.

Petitioner also contends that counsel was ineffective for failing to obtain prior to trial and review with him the transcripts of the recorded telephone conversations. The record does not support petitioner's claim that counsel failed to obtain the transcripts prior to trial. As explained above in connection with petitioner's suppression of evidence claim, the record shows that the transcripts were included in the discovery materials provided to petitioner by the prosecution. With respect to counsel's alleged failure to review the transcripts with petitioner prior to trial, petitioner has not shown how he was prejudiced by this alleged failure. Counsel cross-examined the victim regarding the conversations, *see* Trial Tr., dated 10/11/05, at 28-30, and questioned petitioner about the conversations during petitioner's own testimony, *see id.* at 113-15. Petitioner has not explained what

other testimony could have been offered had counsel reviewed the transcripts with him prior to trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Move to Suppress Recorded Conversations

Petitioner next contends that counsel was ineffective for failing to move to suppress the recorded telephone conversations based on the Fourth Amendment, the federal wiretapping statute, and the Michigan eavesdropping statute. This claim is without merit, because the recordings of the conversations were not subject to suppression on any of these bases.

Although the Fourth Amendment requires a warrant before the police may monitor a telephone conversation between individuals who do not know they are being recorded, no warrant is required when one of the participants in the conversation consents to the monitoring. It is well established that "[a] telephone call can be monitored and recorded without violating the Fourth Amendment so long as one participant in the call consents to the monitoring." *United States v. Novak*, 531 F.3d 99, 101 (1st Cir. 2008) (O'Connor, J., sitting by designation); *see also*, *United States v. Workman*, 80 F.3d 688, 694 (2d Cir. 1996) ("Only a single participant in a conversation need agree to monitoring in order to satisfy the requirements of the Fourth Amendment."); *cf. United States v. White*, 401 U.S. 745, 752 (1970) (surreptitious recording of in-person conversation does not violate the Fourth Amendment where one party to the conversation consents to monitoring). Similarly, the Michigan Supreme Court has held that the search provision of the Michigan Constitution, MICH. CONST. art. 1, § 11, likewise does not prohibit the recording of telephone conversations where one party to the conversation consents. *See People v. Collins*, 438 Mich. 8, 31-40, 475 N.W.2d 684, 694-98 (1991).

Likewise, neither the federal wiretapping statute nor the Michigan eavesdropping statute

prohibited the recording of the conversations between the victim and petitioner. The federal wiretapping statute explicitly provides that "[i]t shall not be unlawful . . . for a person acting under color of law to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). Because the victim consented, the recording did not violate the federal wiretapping statute. *See United States v. Porter*, 29 Fed. Appx. 232, 238 (6th Cir. 2002). Similarly, the Michigan eavesdropping statutes "do not prohibit . . . eavesdropping or surveillance not otherwise prohibited by law by a peace officer of this state or of the federal government, or the officer's agent, while in the performance of the officer's duty." MICH. COMP. LAWS § 750.539g(a). Because monitoring by the police with the consent of a participant is not "otherwise prohibited by law," such monitoring does not violate the Michigan eavesdropping statutes. *See People v. Morris*, No. 232520, 2003 WL 21019244, at *1 (Mich. Ct. App. May 6, 2003) (per curiam); *cf. In re Jenkins*, 437 Mich. 15, 27 n.12, 465 N.W.2d 317, 323 n.12 (1991).

Attempting to overcome these conclusions, petitioner contends that the victim was not capable of consenting, and the recording was "otherwise prohibited by law," because a personal protection order (PPO) issued by a Texas state court prohibited the victim from contacting petitioner. Even if the victim's phone call to petitioner violated the PPO, however, petitioner has offered no caselaw, and I have uncovered none, suggesting that the recording of the conversation was rendered illegal by the fact that the initiation of the conversation may have violated a PPO secured by the victim. Under the Fourth Amendment, consent to monitoring is valid so long as the police did not so pressure the consenting party as to overbear that party's will. *See United States v. Baynes*, 400 F. Supp. 285, 292 (E.D. Pa. 1975). Petitioner does not contend the police engaged in any coercive

conduct which overbore the victim's will.  Likewise, under Michigan law the law enforcement exception does not apply only where the "eavesdropping or surveillance" is "otherwise prohibited by law."  MICH. COMP. LAWS § 750.539g(a).  Even if the victim's initial contact with petitioner was "otherwise prohibited by law," because the police had the victim's consent the monitoring itself was not "otherwise prohibited by law," and thus the § 750.539g(a) exception is still applicable.

In any event, petitioner cannot show that the victim's act of contacting him violated the PPO. The PPO lists the victim as the applicant and petitioner as the respondent.[3]  Section 4 of the PPO provides that "*respondent* is" prohibited from doing certain things, including that "*respondent* is prohibited from communication in any manner with a member of the family or household except through the party's attorney, or a person appointed by the Court, no phone calls." (emphasis added). Nothing in this language, or in any other language of the PPO, purports to restrict the applicant's–that is the victim's–actions in any way.  Texas law supports this conclusion.  The actions which may be prohibited by a court in a PPO are set forth in TEX. FAMILY CODE § 85.022.  Before a PPO may issue, however, a court must find that the respondent has committed "family violence" and that family violence is likely to occur in the future.  *See id*. § 85.001(a).  The statute also provides that "[a] protective order that requires the first applicant to do or refrain from doing an act under Section 85.022 shall include a finding that the first applicant has committed family violence and is likely to commit family violence in the future."  The PPO at issue in this case contains no findings that the victim engaged in any acts of family violence against petitioner.  Further, Texas law provides that PPOs enjoining the actions of both the applicant and the respondent must be issued

---

[3]A copy of the PPO is attached to petitioner's Application for Leave to File Motion to Submit Newly Discovered Evidence in Support of Pending Motion to Remand filed in the Michigan Court of Appeals, and included in this Court's docket entry #11.

separately, *see id.* § 85.003(a), (b), explicitly providing that "[a] court may not render one protective order under Section 85.022 that applies to both parties." *Id.* § 85.003(c). Petitioner does not allege that a second protective order applicable to the victim was issued by any Texas court. Thus, even if a violation of a PPO would otherwise affect the validity of the police monitoring, petitioner has failed to show that the victim's act of contacting him violated any PPO issued by the Texas courts.

Because a motion to suppress the telephone recordings would have been futile, petitioner cannot show that counsel was ineffective for failing to move to suppress the recordings. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Object

Finally, petitioner contends that counsel was ineffective for failing to object to the admission of the other acts evidence and the prosecutor's misconduct in her questioning of the victim. As explained above, petitioner's underlying evidentiary and prosecutorial misconduct claims are without merit. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Because petitioner's underlying prosecutorial misconduct and evidentiary claims are without merit, petitioner cannot show that he counsel was ineffective for failing to object. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.    *Denial of Appeal (Claims XIII & XIV)*

In his thirteenth and fourteenth claims, petitioner contends that he was denied his right to appeal due to the late appointment of appellate counsel. Petitioner asserts that he in fact timely requested appointment of appellate counsel, and that he was denied his right to appeal because when

counsel was appointed late he was limited to filing an application for leave to appeal, rather than an appeal of right.

Under Michigan law, petitioner was required to file his request for counsel within 42 days of the sentence. *See* MICH. CT. R. 6.425(G)(1)(b); 7.204(A)(2). Petitioner was sentenced on October 27, 2005. Although he claims to have filed requests for appointment of counsel on that date and again in November 2005, the trial court docket sheet does not reflect such a request, and the brief filed by counsel in the Michigan Court of Appeals indicates that petitioner requested appointment of counsel on February 28, 2006. *See* Def.'s Delayed App. for Leave to Appeal, in *People v. Foster* (Mich. Ct. App.), at vii. Thus, the record belies petitioner's claim that he timely requested counsel, and that the delay in filing the appeal was the fault of the trial court.

In any event, petitioner cannot establish that he was prejudiced by the failure of counsel to perfect a timely appeal of right, regardless of who was to blame, because petitioner was able to and in fact did file an application for leave to appeal which was considered on the merits. In *Walker v. McKee*, 366 F. Supp. 2d 544 (E.D. Mich. 2005) (Gadola, J.), the petitioner claimed that his appellate counsel was ineffective for failing to timely file an appeal of right, and that prejudice from counsel's failure should be presumed. The Court rejected this claim, explaining:

> Although Petitioner was not allowed to pursue an appeal of right due to his first appellate counsel's conduct, he was, through new counsel, able to file an application for leave to appeal in the Michigan Court of Appeals to pursue his right of direct appeal–and he in fact did so. Thus, his direct appeal cannot be considered "entirely nonexistent."
>
> Furthermore, the record indicates that the Michigan Court of Appeals considered the merits of Petitioner's claims given that it denied his application for leave to appeal "for lack of merit in the grounds presented." Under these circumstances, it cannot be said that Petitioner's appeal was "presumptively unreliable." Although the Michigan court of Appeals did not address the merits of the grounds raised in a written opinion, this Court cannot conclude that the Michigan Court of Appeals' evaluation should be presumed to be unreliable. That is, the Court

concludes that Petitioner is not entitled to a presumption of prejudice after the Michigan Court of Appeals examined his claims through an application for leave to appeal and determined they lacked merit.

*Id*. at 548-49. Similarly, in *Maloof v. Jackson*, No. 04-CV-73192, 2005 WL 2072087 (E.D. Mich. Aug. 25, 2005) (Hood, J.), the petitioner claimed that his plea was invalid because he had been led to believe that he had preserved his appeal of right, rather than only being allowed to appeal his plea by leave. The Court, relying on *Walker* and similar cases, rejected petitioner's claim, concluding that "Petitioner had the benefit of appointed appellate counsel, and his application for leave to appeal was reviewed on the merits by the Michigan Court of Appeals, the same court which would have evaluated his claims on an appeal of right, applying the same standards of review. There is no basis to presume that such review was inadequate or unreliable." *Id*. at *8. And as the Supreme Court explained in *Halbert v. Michigan*, 545 U.S. 605 (2005), "in determining how to dispose of an application for leave to appeal, Michigan's intermediate appellate court looks to the merits of the claims made in the application." *Id*. at 617. Because the Michigan Court of Appeals sits as a court of error-correction, the court "is guided in responding to leave to appeal applications by the merits of the particular defendant's claims, not by the general importance of the questions presented," *id*. at 619, and therefore "the court's response to the leave application by any of the specified alternatives–including denial of leave–necessarily entails some evaluation of the merits of the applicant's claims." *Id*. at 618.

In light of these decisions, petitioner cannot show that the Michigan Court of Appeals's failure to treat his application for leave to appeal as an appeal of right was contrary to, or an unreasonable application of, clearly established federal law, even if he could show that he otherwise timely requested the appointment of appellate counsel. Accordingly, the Court should conclude that

petitioner is not entitled to habeas relief on this claim.

J.    *Newly Discovered Evidence (Claim XII)*

In his twelfth claim, petitioner contends that he is entitled to habeas relief on the basis of newly discovered evidence. Specifically, petitioner contends that the Texas PPO constitutes new evidence which would have supported suppression of the recorded telephone conversations. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.

Further, even if this claim were otherwise cognizable, petitioner cannot show that the Texas PPO constitutes newly discovered evidence of his innocence. As explained above in connection with petitioner's related ineffective assistance of counsel claim, nothing in the Texas PPO would have provided a basis for suppressing the recorded telephone conversations. Contrary to petitioner's argument, no language in the PPO restricted the actions of the victim, and construing the language of the PPO to restrict the victim's actions would have violated the requirements of Texas law in several respects. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

K.      *Evidentiary Hearing (Claims VII, XIII & XIV)*

In his seventh, eighth, and fourteenth claims petitioner asserts that the state courts erred in denying him evidentiary hearings in connection with his various state court proceedings. The Court should conclude that these claims provide neither a basis for habeas relief nor a basis for an evidentiary hearing in this Court.

1.      *State Court Denials of Evidentiary Hearing*

To the extent petitioner's claims assert the state court's denials of an evidentiary hearing as a substantive basis for habeas relief, the claims are not cognizable on habeas review. Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). As the Sixth Circuit has explained:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002). . . . [C]laims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id*. at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id*. at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). The trial court's failure to hold an evidentiary hearing, even if erroneous under state law, does not entitle petitioner to habeas relief. *See Chaussard v. Fulcomer*, 816 F.2d 925, 932 (3d Cir. 1987); *Edwards v. State of Kansas*, 751 F. Supp. 197, 199 (D. Kan. 1990). In short, petitioner's challenge to the state court post-conviction proceedings is not cognizable on habeas review.

2.    *Entitlement to Evidentiary Hearing in this Court*

Nor is petitioner entitled to an evidentiary hearing in this Court. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues:

(1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). Even assuming that an evidentiary hearing were permitted under § 2254(e)(2), such a hearing is not necessary here. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
>
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted). Thus, "'an evidentiary hearing is not required on issues that can be resolved by reference to the state court record.'" *Id.* (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)).

Even assuming that an evidentiary hearing were permissible under § 2254(e)(2), such a hearing is not necessary under Rule 8. Petitioner's evidentiary hearing claims relate to his ineffective assistance of counsel and denial of appeal of right claims. As the analysis of these claims above shows, however, the claims can be resolved on the existing record. Petitioner's ineffective assistance

claims fail because (a) there was no basis upon which to suppress the recorded telephone conversations, (b) counsel thoroughly cross-examined and impeached the victim, and thus both counsel was not deficient and further impeachment would not have altered the jury's verdict, and (c) any objections to the admission of other acts evidence or the prosecutor's questioning of the victim regarding the telephone conversations would have been futile. No evidence adduced at an evidentiary hearing would alter these conclusions. Likewise, even if an evidentiary hearing could develop evidence to show that petitioner timely requested the appointment of appellate counsel, no evidence would overcome the fact that petitioner suffered no harm from the delay in appointment because the application for leave to appeal was an adequate remedy. Accordingly, the Court should conclude that an evidentiary hearing is not necessary.

L.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously

less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability, for the reasons set forth in connection with the analysis of petitioner's claims. As explained above, petitioner's evidentiary, sentencing guidelines, evidentiary hearing, and newly discovered evidence claims are not cognizable on habeas review, and thus the resolution of these claims is not reasonably debatable. The resolution of petitioner's *Blakely* claim is not reasonably debatable because it is clear that *Blakely* does not apply to the determination of the minimum sentence under Michigan's indeterminate sentencing scheme. With respect to petitioner's *Brady* claim, the record shows that transcripts and recordings of the telephone conversation were provided to petitioner, and nothing in the record shows that a fully audible recording existed. There is thus no evidence that the prosecution suppressed any evidence and the resolution of this claim therefore is not reasonably debatable. Finally, the resolution of petitioner's prosecutorial misconduct, ineffective assistance, and denial of appeal claims is not reasonably debatable, for the reasons explained above. Accordingly, the Court should deny petitioner a certificate of appealability.

M.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/19/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 19, 2010.

s/Eddrey Butts
Case Manager

45